UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

**SEP 18 2018**

Clerk, U.S. District and
Bankruptcy Courts

I.W.,[1] *et al.*,

*Plaintiffs*,

v.

DISTRICT OF COLUMBIA,

*Defendant*.

Civil Action No. 16-cv-2346 (DLF)

## MEMORANDUM OPINION AND ORDER

The Individuals with Disabilities Education Act provides a right to a free appropriate public education (FAPE) for eligible children with disabilities. A FAPE entitles children with disabilities to a uniquely tailored individualized education program. The parents of Washington, D.C. student I.W. filed this lawsuit alleging that the District of Columbia Public Schools proposed an inappropriate individualized education program for I.W. and, as a result, denied him a FAPE. Before the Court are the parties' cross-motions for summary judgment. For the reasons that follow, the Court will remand the case to the hearing officer for further proceedings.

## I. BACKGROUND[2]

I.W. currently attends a private school in the District of Columbia (D.C.), but from 2009–2013, he attended his neighborhood D.C. public school. In 2012, I.W.'s parents obtained a private psychoeducational evaluation of I.W. because of his academic challenges. That

---

[1] I.W. is a minor. The Court refers to him by his initials in accordance with Rule 5.4(f)(2) of the Local Civil Rules.

[2] Unless otherwise noted, all facts in this section are from the plaintiffs' statement of material facts as to which there is no genuine issue. Dkt. 14; *see* LCvR 7(h)(1).

evaluation revealed that I.W. had a written expression disorder and recommended that he receive certain services and tutoring. In December 2012, D.C. Public Schools (DCPS) found I.W. eligible for special education services and proposed an Individualized Education Program (IEP). The IEP recommended one hour per week of specialized instruction outside of the general education setting and 30 minutes per week inside the general education setting. DCPS later amended I.W.'s IEP to recommend 2 hours per month of occupational therapy services in the general education setting.

Even with the IEP, however, I.W. continued to struggle academically. I.W.'s parents therefore enrolled him in a private school that specializes in educating students with dyslexia, ADHD, and other learning disabilities for the 2013–2014 school year. I.W.'s private school provides full-time special education services and integrated speech and language and occupational therapy services in the classroom.

Before the 2015–2016 school year, I.W.'s parents initiated the special education eligibility process through DCPS and obtained another private psychological assessment of I.W. That assessment placed I.W. in the high-average range for verbal comprehension, the average range for visual spatial index, fluid reasoning, and working memory, and the low-average range for processing speed. A.R. 224–27. The assessment also diagnosed I.W. with developmental dyslexia, a written expression disorder, and a mathematics disorder. *Id.* 234–36.

During an October 26, 2015 initial screening meeting, the parties agreed that DCPS would conduct an occupational therapy evaluation of I.W. and review his psychological assessment. Thereafter, a DCPS occupational therapist evaluated I.W. and concluded, among other things, that it is difficult for I.W. to integrate visual information with motor output, that he struggles to regulate his arousal level, and that handwriting is an area of weakness. *Id.* 263–69.

2

The DCPS psychologist who reviewed I.W.'s independent psychological assessment noted that I.W. needs redirection from teachers to stay on task and complete assignments. *Id.* 260. The DCPS psychologist also concluded that I.W. meets the criteria for a specific learning disability and that he would benefit from various accommodations, including repeated instructions and follow-up, extended time, shortened assignments, and attentional breaks. *Id.* 261–62.

The IEP team found I.W. eligible for special education services as a student with specific learning disabilities in reading, writing, and math. Although I.W.'s parents and DCPS agreed on I.W.'s goals, they disagreed about what services could help I.W. make progress on those goals. DCPS proposed an IEP that includes 10 hours per week of specialized instruction in the general education setting and the following special instruction outside of the general education setting: 2.5 hours per week of specialized written expression instruction, 2.5 hours per week of specialized instruction in reading, and 2.5 hours per week of specialized instruction in math. *Id.* 580–81. The proposed IEP also includes four hours per month of occupational therapy in the general education setting and two hours per month outside of the general education setting. *Id.* I.W.'s parents, however, asserted that I.W. needs more service hours and a more intensive special education program to make progress on his goals.

In spring 2016, I.W.'s parents hired an educational consultant to analyze whether DCPS's proposed educational program at the public school and I.W.'s current placement at the private school were appropriate. Based on the consultant's review, which included observing I.W. at the private school, the consultant concluded that the proposed educational program at the public school would not be appropriate for I.W. but that his private school could continue to provide him with the services he needs.

In August 2016, I.W.'s parents notified DCPS that I.W. would continue to attend his private school for the 2016–2017 school year because DCPS failed to offer him a FAPE. When DCPS refused to fund his private school tuition, I.W.'s parents requested a due process hearing to challenge DCPS's proposed educational program and placement.

During the hearing, I.W.'s parents argued that DCPS denied I.W. a FAPE in four ways: (1) by failing to propose an appropriate IEP for the 2015–2016 and 2016–2017 school years; (2) by failing to propose an appropriate placement for the 2015–2016 and 2016–2017 school years; (3) by failing to timely determine I.W.'s eligibility for special education services by December 2015; and (4) by failing to timely develop I.W.'s IEP for the 2015–2016 school year by December 2015. *Id.* 576–78. They also argued that DCPS's proposed educational program and placement for I.W. are flawed because I.W. needs more service hours than the public school can provide. They therefore requested that DCPS place I.W. in his private school, pay his private school tuition for the 2016–2017 school year, and reimburse them for all tuition and related expenses associated with his attendance at the private school during the 2015–2016 school year. The hearing officer concluded that DCPS did not deny I.W. a FAPE and denied the requested relief. *Id.* 588.

On November 30, 2016, the plaintiffs filed this action challenging the hearing officer's determination.[3] Compl., Dkt. 1. In their motion, plaintiffs argue that the hearing officer committed the following errors: first, the hearing officer misapplied the relevant burden of proof provisions; second, the hearing officer misapplied the FAPE standard; third, the hearing officer incorrectly assessed the credibility of witnesses; fourth, the hearing officer failed to address contradictions in DCPS's case; and fifth, the hearing officer applied the wrong legal standard to

---

[3] This case was reassigned to the undersigned judge on December 5, 2017.

4

the plaintiffs' claim for tuition reimbursement. *See* Pl.'s Mot., Dkt. 14 at 2. Because the Court concludes that the hearing officer misapplied the FAPE standard, it does not resolve the plaintiffs' other challenges here.

## II. LEGAL STANDARDS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "On cross-motions for summary judgment, each party carries its own burden to demonstrate that there are no disputed material facts and it is entitled to judgment in its favor." *McLean v. Dist. of Columbia*, 264 F. Supp. 3d 180, 183 (D.D.C. 2017).

The procedural safeguards available to parents attempting to secure a free appropriate public education for their children are set forth in 20 U.S.C. § 1415. The Supreme Court has established a two-part test that courts must use to review suits brought under that statute: "First, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits?" *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206–07 (1982). "Any review of an IEP must appreciate that the question is whether the IEP is *reasonable*, not whether the court regards it as ideal." *Endrew F. v. Douglas Cty. Sch. Dist.*, 137 S. Ct. 988, 999 (2017). "The adequacy of a given IEP turns on the unique circumstances of the child for whom it was created." *Id.* at 1001.

When "no additional evidence is introduced in a civil suit seeking review" of a hearing officer's determination, "a motion for summary judgment operates as a motion for judgment based on the evidence comprising the record." *Brown v. Dist. of Columbia*, 568 F. Supp. 2d 44, 50 (D.D.C. 2008). "The party challenging the administrative determination takes on the burden

of persuading the court that the hearing officer was wrong." *Middleton v. Dist. of Columbia*, 312 F. Supp. 3d 113, 129 (D.D.C. 2018) (quoting *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1988)) (internal quotation marks and alteration omitted). The "court must give due weight to the" hearing officer's determination "and may not substitute its own notions of sound educational policy for those of the school authorities." *Turner v. Dist. of Columbia*, 952 F. Supp. 2d 31, 35–36 (D.D.C. 2013) (quoting *S.S. v. Howard Rd. Acad.*, 585 F. Supp. 2d 56, 63 (D.D.C. 2008)) (internal quotation marks omitted). But "a hearing decision without reasoned and specific findings deserves little deference," *Reid v. Dist. of Columbia*, 401 F.3d 516, 521 (D.C. Cir. 2005) (quoting *Kerkam v. Superintendent, D.C. Pub. Sch.*, 931 F.2d 84, 87 (D.C. Cir. 1991)) (internal quotation marks omitted), and in such a case, a "district court may determine that the 'appropriate' relief is a remand to the hearing officer for further proceedings," *id.* at 526. A district court must base "its decision on the preponderance of the evidence." 20 U.S.C. § 1415(i)(2)(C)(iii).

## III. ANALYSIS

The plaintiffs argue that the hearing officer misapplied the FAPE standard by failing to consider I.W.'s unique needs when determining whether DCPS provided him with an appropriate educational program and placement. "To meet its substantive obligation under the IDEA, a school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F.*, 137 S. Ct. at 999. "An IEP is not a form document. It is constructed only after careful consideration of the child's present levels of achievement, disability, and potential for growth." *Id.* The "IDEA also requires that children with disabilities be placed in the least restrictive environment." *Moradnejad v. Dist. of Columbia*, 177 F. Supp. 3d 260, 273 (D.D.C. 2016) (internal quotation marks omitted).

6

The hearing officer provided five reasons to support her conclusion that DCPS proposed an appropriate IEP and placement for I.W. First, the hearing officer noted that I.W.'s IEP team "reached general agreement about his goals," and there was "no claim that his goals are inappropriate." A.R. 585. Second, she found that the IEP included substantial accommodations for I.W.'s executive functioning needs and could be augmented if those supports proved inadequate. *Id.* Third, she pointed out that the new IEP "dramatically increased the level of services" that I.W. would receive in public school compared to what he had received when he left public school. *Id.* Fourth, she found that DCPS was responsive to I.W.'s parents' feedback where it was provided.[4] *Id.* And finally, the hearing officer concluded that I.W. does not need a severely restrictive setting because "he does not have significant behavior deficits, and he generally gets along well with his nondisabled peers." *Id.*

The hearing officer also made factual findings about I.W. and about the proposed placement school. Specifically, she found that I.W. "is a pleasant, bright, exuberant, thoughtful student who is an eager learner." *Id.* 583. She noted that I.W. regularly spends time with nondisabled peers through lacrosse, basketball, and sleepaway camp. *Id.* 584. Regarding I.W.'s proposed placement school, the hearing officer found that the public school would provide a total of 10 hours[5] of evidence-based specialized instruction outside of the general education classroom

---

[4] "[T]he IDEA mandates that the parent be allowed to meaningfully participate in the development of his or her child's IEP." *Lofton v. Dist. of Columbia*, 7 F. Supp. 3d 117, 123 n.6 (D.D.C. 2013).

[5] The Court notes, however, that although the hearing officer found that the proposed public school placement would offer I.W. 10 hours of specialized instruction per week outside of the general education setting, I.W.'s IEP provides for only *7.5 hours* of specialized instruction outside the general education setting. A.R. 399, 580–83. And the hearing officer made clear that she did not rely on the additional time for purposes of her determination. *Id.* 587 n.55.

each week—half of which would be spent in a reading resource class and the other half in a math class—and both classes would be comprised of 5–7 students. *Id.* 582–83. The hearing officer also found that I.W. would receive 10 hours per week of specialized instruction within the general education setting, and during those 10 hours, the special education teacher would be responsible for 5–8 special education students. *Id.* 582. The hearing officer further determined, at least with respect to the specialized instruction classes, that a 5–7 student per teacher ratio would be appropriate for I.W. *Id.* 583. Finally, the hearing officer stated that, following the adoption of the IEP, there would be a 30-day review meeting held to determine whether to change I.W.'s IEP to suit his needs. *Id.*

But the hearing officer's determination is largely devoid of any explanation as to how DCPS's proposed IEP and school placement is designed to meet I.W.'s unique academic needs. In particular, the hearing examiner did not explain how 17.5 hours per week of specialized instruction (10 of which would occur in a general education setting) is reasonably calculated to provide I.W. educational benefit. And on this point, the hearing officer heard conflicting evidence. The plaintiffs' educational consultant testified that I.W.'s private school—which provides I.W. 35 hours of specialized instruction per week outside of the general education setting—meets I.W.'s needs, but the proposed IEP and public school placement would not. *See* Hearing Transcript, Day 1 48–64; 73–74. DCPS's witnesses testified to the contrary. *See, e.g.*, Hearing Transcript, Day 2 56–57. The hearing officer did not credit the testimony of the DCPS

---

The Court also notes that paragraph 20 of the hearing officer's decision mislabels I.W.'s reading instruction as being *inside* the general education setting, while his IEP lists it as *outside* the general education setting. *Compare id.* 580, *with id.* 399.

witnesses over the plaintiffs' educational consultant.[6] Instead, she simply noted that DCPS "dramatically increased" the level of academic services that I.W. would receive compared to what he previously received when he attended the placement school during the 2012–2013 academic year. A.R. 585. But that fact alone does not resolve the central issues in dispute: whether 7.5 hours per week of specialized instruction outside of the general education classroom would meet I.W.'s needs and whether I.W. would benefit from 10 hours per week of specialized instruction within the general education classroom, given his significant challenges with attention and executive function.[7] Addressing the plaintiff's request that I.W. receive full-time instruction outside of the general education setting, the hearing officer summarily concluded, without explanation, that "the record does not indicate that [I.W.] needs such a severely restrictive setting for either his academic needs or his social-emotional needs." *Id.* Aside from noting that "[I.W.] does not have significant behavioral deficits" and "generally gets along well with his nondisabled peers," *id.*, the hearing examiner provided no justification for her conclusion that 10 hours per week of specialized instruction within the general education setting and 7.5 hours per week of specialized instruction outside of the general education setting would meet I.W.'s *academic*, as opposed to social-emotional, needs.

---

[6] The hearing officer did conclude, however, that the plaintiffs' educational consultant was incorrect about the number of hours of specialized instruction that I.W. would receive at the public school. A.R. 582. As noted, the hearing officer found that I.W. would receive a total of 10 hours of specialized instruction per week outside of the general education classroom even though I.W.'s IEP provides for only 7.5 hours of specialized instruction per week outside of the general education classroom. *Id.* 582–83.

[7] Relatedly, the hearing officer did not indicate in her determination whether I.W. would be deprived of other important educational benefits by being pulled out of the general education classroom for specialized instruction each week.

The law is clear that FAPE determinations cannot be based on a one-sized-fits-all approach that fails to account for the unique nature, characteristics, and needs of each child. What works for one child may not work for another. In assessing a proposed IEP and school placement, a hearing examiner must make an individualized assessment, taking into account a child's "present levels of achievement, disability, and potential for growth," *Endrew F.*, 137 S. Ct. at 999, to determine whether the education program is tailored to meet the child's "unique needs," *id.* This requirement is particularly important where, as here, the record reflects that the child is thriving in his current educational environment.

The Court expresses no view as to whether the hearing officer's ultimate conclusion is correct. Before the Court can review that decision, the hearing officer must first provide reasoned and specific findings that adequately explain whether, and if so *how*, the proposed IEP and school placement meets I.W.'s unique needs and is "reasonably calculated to enable [I.W.] to receive educational benefits," *Rowley*, 458 U.S. at 207, and make academic progress, *Endrew F.*, 137 S. Ct. at 999. Because the hearing officer did not adequately explain her conclusion that the proposed educational program provides I.W. with a FAPE, the Court remands the case to the hearing officer for further proceedings to determine whether DCPS's proposed educational program is reasonably calculated to enable I.W. to receive educational benefits.

## CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the plaintiffs' Motion for Summary Judgment, Dkt. 14, and the defendant's Cross Motion for Summary Judgment, Dkt. 16, are **DENIED** without prejudice. It is

Further **ORDERED** that the case is **REMANDED** to the hearing officer for further proceedings consistent with this memorandum opinion.

**SO ORDERED.**

_____
DABNEY L. FRIEDRICH
United States District Judge

Date: September 18, 2018